THE S. ANDERSON.[1]

SAVELAND and others v. THE S. ANDERSON.

(*District Court, E. D. Wisconsin.* April, 1886.)

COLLISION—CROSSING COURSES—SPECIAL CIRCUMSTANCES JUSTIFY A DEPARTURE FROM THE ORDINARY RULE — FAULTY EXECUTION OF MANEUVER — HALF DAMAGES.

The schooner E., while sailing with the wind nearly aft, sighted the schooner A. The latter vessel was, at the time, close-hauled on the starboard tack. The vessels were sailing on crossing courses; the red light of the E. bearing five points on the A.'s starboard bow, and the green light of the A. bearing four points on the E.'s port bow. The distance between the vessels was from one-eighth to one-fourth of a mile. A thick fog prevailed, shutting in the lights

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

of both. In this emergency the E., instead of passing astern of the A., luffed. The A., instead of holding her course, put her helm up. In executing the maneuver the E. did not luff sufficiently to materially deaden her headway, and the A., instead of gaining distance by a slight change of helm, made an extended circuit. When each vessel attempted to regain the course upon which she had been sailing, prior to the execution of the maneuver, they met again in closer proximity, but in positions otherwise corresponding almost precisely with those in which they originally stood. *Held*, that the closeness of the vessels when first seen was a special circumstance which justified a departure from the ordinary rule of the road, but that as both vessels were in fault in the execution of the maneuver, and as the collision resulted therefrom, the damages should be divided.

In Admiralty.

*M. C. Krause*, for libelants.

*Van Dyke & Van Dyke*, for claimant.

DYER, J. This is a libel *in rem* to recover damages for injuries to the schooner Ebenezer, caused by a collision with the schooner Anderson. The collision occured about 10:30 P. M., June 14, 1879, on Lake Michigan, about 15 miles off Port Washington. The night was dark, and there was a heavy fog which prevented a view of objects except at a short distance. The wind was a moderate breeze from the south. The Ebenezer, bound from Milwaukee to Washington Harbor, was heading N. by E. $\frac{1}{2}$ E., and, with all sails set, was sailing light directly before the wind, at a speed of about five miles an hour. The Anderson, bound from Elk Rapids to Chicago, was sailing close-hauled on the starboard tack, laden with a cargo of pig-iron, and heading S. E. by E. Her speed was about four miles an hour. The lights of both vessels were in their proper places, and burning. The red light on the Ebenezer was first seen on the Anderson when about a quarter of a mile distant, and bearing about S. by E. $\frac{1}{2}$ E., or about five points on her weather bow. The Anderson's green light was first seen on the Ebenezer when the vessels were about one-eighth of a mile apart, bearing about four points on her lee bow. On the Anderson it was the master's watch, composed of three persons,—the master as officer of the deck, one seaman as lookout stationed on the forecastle, and another at the wheel. On the Ebenezer it was also the master's watch, composed of two persons,—the master at the wheel and one seaman forward. The Anderson carried a master, mate, and four seamen. The Ebenezer carried a master, mate, two seamen, and a passenger. The lookout on each vessel sounded the fog-horn according to the regulations, but on neither vessel was the horn of the other heard.

The courses of the two vessels crossed, and when the crew of each knew of the proximity of the other they were very close. As the Ebenezer had the wind free, and as the Anderson was close-hauled on the starboard tack, it was the duty of the Ebenezer to give way. The general rule applicable to the situation required the Ebenezer to change her helm so as to go off to the starboard side of the Ander-

son, passing her astern, and for the Anderson to keep her course. But as the vessels were so close when the lights of each were first seen, I am satisfied the Ebenezer could not have performed that maneuver with safety, and, in obeying the rules, "due regard must be had to all dangers of navigation, and to any special circumstances which may exist in any particular case rendering a departure from them necessary in order to avoid immediate danger."

The testimony shows that when the green light of the Anderson was sighted, the vessels, as near as could then be determined, being about one-eighth of a mile apart, and rapidly meeting, the master of the Ebenezer put her wheel hard down. The men below were called up, and the main sheet was hauled aft. This brought the vessel up in the wind, heading about east. At the same time the wheel of the Anderson was put up, her mizzen sheet was slacked off, and the vessel ran before the wind. This movement brought her on a northeasterly course. Thus, both vessels tried to keep out of the way of the other, and, as we shall presently see, the movement of each tended to baffle the other. The mate of the Ebenezer says when he arrived on deck from below he saw the stern of the Anderson as she was passing off on a north-east course before the wind. The lookout on the Anderson says that as that vessel changed her course from S. E. by E. to N. E., or N. E. by E., he saw the broadside of the Ebenezer, which placed that vessel on an easterly course, or, perhaps, a little south of east. Thus the vessels were situated when, after a few moments, the master of the Anderson, undoubtedly supposing he had sailed far enough out of his original course to again resume that course without danger of collison, ordered the wheel of that vessel put down and the mizzen sheet hauled aft. This brought her back on her starboard tack, and in a moment or two, as she gained headway, she found the Ebenezer again directly in her path, with a collision then unavoidable, and she struck the Ebenezer directly amidships, bow on.

With these facts before us, it is not difficult to see what were the causes of the collision. Indeed, it is plain that both vessels were in fault. Since the vessels were too close to enable the Ebenezer to jibe and go astern of the Anderson when they first sighted each other, the movement by which it was sought to put her up in the wind was a proper one. As there were only two men on deck, and as those below had to be called up, there was some delay when every moment was precious in hauling the main and fore sails aft, so as to successfully bring the vessel up to the wind; and I am satisfied she was never, during the affair, brought as high up into the wind as she would head. After being hauled round she stood on an easterly course. This conclusion accords with the weight of the testimony, and with the circumstances, and with the diagrams furnished by both parties. One or two of the witnesses think she may have been brought round so as to be heading E. S. E., but the circumstances strongly indicate that

she stood more to eastward. Even if her course was E. S. E., she was within six points of the wind, and she would head five points to the wind. This is the testimony of the mate. After she was brought about, and her speed thereby slackened, she would soon drop off, her canvas would fill, and she would move ahead, and this is precisely what the libelant Saveland, who was on board, says she did. As she took an easterly course, therefore, she was going ahead, so that when the Anderson, after her first maneuver to avoid the collision, resumed her original course, both vessels, although at some distance from their first point of proximity, met again in positions corresponding almost precisely with those in which they originally stood to each other, and thus the collision was brought about. It is evident that when the Anderson changed her course, and went off with the wind to the north-east, and the Ebenezer also changed her course, and went to the eastward, they were going upon almost parallel courses, so that when each attempted to regain her original course there was as much danger of a collision as in the outset.

This, I am convinced, is the true story of this collision, and it seems plain that it might have been averted if the Ebenezer had kept up nearer to the wind, so that her movement ahead would have been more effectually arrested, and if the Anderson, instead of making a circuit towards the north-east, had kept her course, varying from it perhaps a point or two to the northward, as the necessity of the case might require. It took time for her to change her course and go off with the wind, and then to come back on her course again, and this proved to be just enough time to bring the Ebenezer, as she went off to the eastward, directly in position where the two vessels must meet. Thus the movement of each tended to baffle the other, whereas, if the Ebenezer had gone as high up in the wind as she could be placed, her speed would have been more effectually slackened, and the Anderson, by keeping her course, being under full speed, would have passed by. This, it seems clear, could have been accomplished, even if the master of the Anderson had deemed it necessary to deflect from her course one or two points.

It seems to me a plain case of fault in both vessels, and therefore one in which the damages must be divided. Decree accordingly.